# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY LEE SOSA | Case No. 1:25-cv-00659-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| FRANK BISIGNANO, Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff Randy Lee Sosa ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.     BACKGROUND

Plaintiff was born in 1978. (Administrative Record ("AR") 36, 72.) He earned a high school diploma. (AR 18, 49.) Plaintiff filed an application for supplemental security income, alleging he became disabled on November 14, 2020, due to congestive heart failure, cardiomyopathy, and hypertension. (AR 295.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

A.      **Relevant Evidence of Record**[2]

Plaintiff completed two exertional questionnaires, one dated August 9, 2022, and the other dated October 31, 2022. (AR 252–54, 266–68.) Both questionnaires included the following question: "Please describe what kinds of things you do on an average day and how those activities make you feel." (AR 252, 266.) On the August questionnaire, Plaintiff answered: "I don't do anything. I sit most of the day. I will go to AA meetings and visit with my children. I take naps, watch TV, as long as I don't do physical activity I am ok and my medication." (AR 252.) On the October questionnaire, Plaintiff answered: "Visit with kids, then I nap to recoup or a long rest between activities. I the volunteer [at] Recovery Home. All I do is desk work [at] recovery home." (AR 266.)

Both questionnaires also included the questions: "Do you clean your own home or living area . . . If YES, please list the chores you do and how long it takes you to do them," (AR 253, 267), and "[d]o you have difficulty finishing any of your housework or other chores?," (AR 254, 268). As to the first question asking if Plaintiff cleans his living area, on the August questionnaire, Plaintiff stated he does not clean his own home or living area, but also stated, "I will sweep + mop, I will take breaks in between. I have a blanket, I just fold it onto bed." (AR 253.) And on the October questionnaire, Plaintiff answered that he does clean his own home of living area and stated: "Sweep + mop my and dust my Room only because I live in a shelter. I must rest in between each chore, and it can take from 10 min to 45 minutes [to] complete a task." (AR 267.) Regarding the question about whether he has difficulty finishing his housework or chores, in the August questionnaire, Plaintiff stated, "Yes, I will sweep, take a break because I am out of breath. I will mop the same way I sweep. I take breaks in between." (AR 254.) And on his October questionnaire, he responded, "No[, j]ust takes me a while to complete." (AR 268.)

On both of these questionnaires, Plaintiff stated he drives an automatic car. (AR 253, 267.) On the August questionnaire, Plaintiff stated that he can drive "10 miles [at] most," (AR 253), and on the October questionnaire, Plaintiff indicated that he drives "on average 1 hr a day," (AR 267).

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

Turning to the medical evidence, as to Plaintiff's congestive heart failure, a June 30, 2021 record reflects that Plaintiff's ejection fraction was 36 percent. (AR 501.) A December 19, 2022 record reflects Plaintiff's injection fraction as to his left ventricle had improved to 46 percent. (AR 517.) The record also includes a "Cardiac Medical Source Statement" containing information regarding Dr. Kusai Aziz's assessment of Plaintiff's cardiac condition and corresponding medical opinions regarding Plaintiff's condition. (AR 529–32.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on September 21, 2022, and again on reconsideration on December 15, 2022. (AR 102–06, 108–13.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 198–99.) The ALJ conducted a hearing on January 17, 2024. (AR 43–71.) Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions and work history. (AR 45–67.) During the hearing the ALJ asked Plaintiff: "In your function report or your exertional report, you had said that you spent most of your day sitting. Is that not the case anymore?" (AR 61.) In response, Plaintiff explained,

> No. I never said that. I said that I sit and I lay down. It's like, on my day—what I do on my days—I said that most of the time, I sit and watch movies. And then, I'll go lay down. And then, I'll go back and sit on the couch. And then, I'll go lay down. It just depends on how I feel, you know? It's not—there's not much I could do, except for go back and forth.

(*Id.*) Plaintiff also testified that he did not have a driver's license and did not drive his children, who he testified were 13 and 16 at the time of the hearing, to school. (AR 48–49.)

Plaintiff also answered questions about his volunteer work, in which he explained he would do desk work at a recovery home. (AR 52.) He stated that he would help answer phones or do phone intake. (AR 53.) As to how often he did this work, Plaintiff explained that he would go in "at random times" because the time was not scheduled. (*Id.*) Instead, he would just go in to help or the staff would ask if he was available. (*Id.*) He explained that he would volunteer only for two to three hours at a time, (AR 53), because beyond that he would either "get tired" or could not sit for longer than those two to three hours, (AR 64). He recounted that after two to three hours he would go home because he felt "uncomfortable" and "drained," such that when he got home, he would

"usually take a nap." (*Id.*)

In discussing his limitations more broadly, Plaintiff testified he needs to take a nap and or lay down for 30 minutes to an hour "at least twice a day . . . maybe more than that," (AR 65).

A Vocational Expert ("VE") also testified at the hearing, answering a series of hypothetical questions posed by the ALJ. (AR 67–70.) In relevant part, the VE testified that being off task 20 percent of the workday and / or one extra 30-minute break per day in addition to a lunch break and other regularly scheduled breaks would preclude all competitive work at all exertional levels. (AR 69–70 (reflecting the ALJ's response to the question, "If the individual needed to take extra breaks—at least one extra break of 30 minutes per day, in addition to the lunch and other breaks already offered—would those breaks cause a problem with competitive work?," with the answer, "Yes. That wouldn't be tolerated. That would require some type of special accommodation, which is not usual and customary.") The VE testified that a person with a hypothetical RFC. which was ultimately adopted by the ALJ as addressed below, could perform the jobs of escort vehicle driver, document preparer, and telemarketer. (AR 68–70.)

**C.     The ALJ's Decision**

In a decision dated March 6, 2024, the ALJ found that Plaintiff was not disabled. (AR 10–20.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 10–19.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since March 25, 2022. (AR 12.) At step two, the ALJ found Plaintiff's following impairments to be severe: congestive heart failure, cardiomyopathy, hypertension, hernia, and obesity. (AR 12–13.) The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 13–14.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and

at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 416.967(a) except occasionally lift and carry 10 pounds, occasionally climb ramps and stairs, crawl, but never climb ladders, ropes or scaffolds. The claimant should not work in extreme cold temperatures and can have occasional exposure to pulmonary irritants such as fumes, odors, dusts and gases.

(AR 14; *see also id.* at 14–18.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record." (AR 15.)

The ALJ then determined that Plaintiff could not perform his past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 18–19.) In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing. (AR 67–70.) The VE had testified that a person with the RFC specified above could perform the jobs of escort vehicle driver, document preparer, and telemarketer. (AR 68–70.) The ALJ ultimately concluded Plaintiff was not disabled at any time after March 25, 2022, the alleged onset date. (AR 19.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 30, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

#### A.     Applicable Law

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.     DISCUSSION

Plaintiff asserts two claims of error: the ALJ erred in (1) failing offer reasons for discounting Plaintiff's subjective complaints which, if credited, would have required additional work-related limitations in the RFC and (2) not properly evaluating the persuasiveness of Dr. Aziz's opinion. (*See*

7

Doc. 14 at 4–12.) The Commissioner counters that the ALJ (1) properly evaluated the medical opinion evidence, including Dr. Aziz's opinion, and (2) reasonably considered Plaintiff's subjective statements. (Doc. 16 at 4–11.) The Court agrees with Plaintiff that the ALJ did not sufficiently explain why they discounted Plaintiff's subjective complaints that, if credited, would have necessitated further work-related limitations.[4] (*See* Doc. 14 at 11–12.)

**A.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of the symptoms only if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may

---

[4] Because further proceedings will necessitate the re-evaluation of Plaintiff's symptom statements as a whole, *see infra*, the Court does not reach the issue of the ALJ's treatment Dr. Aziz's medical opinion. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

8

consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.    Analysis**

The ALJ provided two sets of reasons for finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 15.)  Specifically, the ALJ's decision appears to rely on inconsistencies between Plaintiff's statements and (1) the medical evidence and (2) Plaintiff's activities of daily living.  However, upon review, the Court concludes that the ALJ did not provide "clear and convincing reasons" to discount Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms.

1.    <u>The Objective Medical Evidence</u>

First, the Court examines the ALJ's reasoning as to alleged inconsistencies between Plaintiff's subjective complaints and the medical evidence.

In general, "conflict[s] between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine[] . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  The Ninth Circuit explained, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that

9

the ALJ can consider in his credibility analysis"). Because the ALJ did not base their decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence can be a relevant factor evaluating Plaintiff's subjective complaints.

However, where an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Importantly, an ALJ must explain *how* the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015).

The Court finds that the ALJ failed to adequately explain how the medical evidence was inconsistent with Plaintiff's reported symptoms and limitations. The ALJ's analysis starts with the statement "[a]s for the claimant's statements about the intensity, persistence, and limiting effect of his or her symptoms, they are inconsistent because they are not supported by the objective evidence of record as summarized below." (AR 15.) The ALJ then provides several paragraphs in which the ALJ merely recites medical evidence without any discussion of any specific inconsistencies between the evidence recited and Plaintiff's subjective complaints. (*See* AR 15–16.) Without restating the several long paragraphs, in which the ALJ merely lists various aspects of the medical record with few coherent organizing principles, the Court observes that this part of the ALJ's opinion simply restates findings in the medical record regarding Plaintiff's diagnosis of a small ventral hernia, chronic systolic congestive heart failure and various data and medical observations regarding Plaintiff's congestive heart failure, an abnormal EKG, physical examinations, an echocardiogram, and Plaintiff's blood pressure.

After recitation of this medical evidence, the ALJ discussed only how they had incorporated *some* of Plaintiff's symptoms and alleged limitations that the ALJ presumably credited into the RFC. (AR 15–16; *see id.* at 16 ("The claimant testified that due to his heart condition, he had been unable

to have surgery to address his hernia. Based on the hernia, as well as the claimant's heart condition, likely exacerbated by obesity and hypertension, the undersigned finds that the claimant can lift and carry 10 pounds occasionally and can occasionally climb or crawl but cannot climb ladders, ropes or scaffolds. The undersigned has also limited work in extreme cold conditions based on the claimant's report of exacerbated symptoms during cold conditions. Finally, the undersigned has provided for occasional exposure to pulmonary irritants to further address the claimant's heart condition.").)

While the Commissioner points to the ALJ's recitation of the medical evidence in defense of the ALJ's adverse credibility finding, (Doc. 16 at 9), in reviewing the medical evidence, ALJ did not identify any of Plaintiff's alleged symptoms or limitations that the ALJ determined were discredited by the medical evidence or otherwise explain *how* any medical evidence was *inconsistent* with Plaintiff's alleged symptoms or limitations.[5] This is confusing in light of the ALJ's thesis statement as to the apparent inconsistencies between the medical evidence and Plaintiff's statements, and also fails to satisfy the standard of providing the kind of clear and convincing reasons for discounting Plaintiff's complaints. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Without an indication of what inconsistencies between the medical evidence recited and Plaintiff's reported symptoms and limitations upon which the ALJ may have relied, the ALJ's "path [cannot be] reasonably discerned." *Molina v. Astrue*, 674 F.3d 1112, 1121 (9th Cir. 2012); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).

    2.    Plaintiff's Activities of Daily Living

Turning to the ALJ's discussion of Plaintiff's activities of daily living, the ALJ's reasoning

---

[5] Later in the ALJ's analysis—in the context of a discussion regarding Plaintiff's activities of daily living—the ALJ notes that "the record reveals improvement in [Plaintiff's] injection fraction." (AR 18). Even assuming the ALJ was referring to an *ejection* fraction, the ALJ did not explain *how* this medical evidence was inconsistent with Plaintiff's statement of symptoms and limitations—in particular, his need for breaks multiple times a day to lay down due to fatigue, (AR 61, 63–64). The ALJ's discussion of this medical evidence is insufficient to establish clear and convincing reasons for discrediting Plaintiff's testimony. *See Dennis S. v. Comm'r of Soc. Sec.*, No. 6:17-CV-01290-HZ, 2019 WL 1128753, at *6 (D. Or. Mar. 11, 2019) ("Nor did the ALJ explain how slight improvements in Plaintiff's ejection fraction rates discredit Plaintiff's testimony. When the ALJ fails to specify evidence supporting the reasons for discrediting the claimant's testimony, it is not this court's role to search the record and make independent findings. I conclude that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony on the effects of his congestive heart failure." (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015))); *Williams v. Berryhill*, No. CV 18-0078 AS, 2018 WL 8016189, at *5 (C.D. Cal. Nov. 21, 2018) ("Further, the improved ejection fraction rate does not undermine Plaintiff's testimony that he has to elevate his legs for two to three hours daily.").

11

fairs no better under the clear and convincing standard.

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). Daily activities "form the basis of an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112 (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting"). However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603. Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* Notwithstanding, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639.

The Commissioner contends that the ALJ "validly considered" Plaintiff's daily activities (Doc. 16 at 9), and that the ALJ's adverse credibility determination is properly based both on the ALJ's finding that (1) Plaintiff's activities of daily living are "commensurate with work activity" and (2) the activities of daily living "demonstrate that the claimant's subjective complaints overstate her limitations," (*id.* at 10). The Court disagrees and finds that the ALJ failed to clearly and convincingly explain *how* Plaintiff's activities of daily living (1) are inconsistent with his testimony as to Plaintiff's symptoms and limitations or (2) demonstrate that Plaintiff is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Starting with whether Plaintiff's daily activities contradicted other testimony, the ALJ did note an "inconsistency" stemming from one of Plaintiff's answers to the August 9, 2022 exertional questionnaire, in which Plaintiff stated that he "sit[s] most of the day." (AR 18 ("While he reported on an exertional questionnaire that he sat most of the time, this is inconsistent.").) For the following

reasons, the Court concludes that the ALJ's reliance on this "inconsistency" does not satisfy the requirement that the ALJ provide clear and convincing reasons for discounting Plaintiff's testimony.

First, in considering Plaintiff's answer to the question on the August exertional questionnaire asking Plaintiff to describe what kinds of things [he] do[es] on an average day and how those activities make [him] feel," the ALJ improperly ignored the context of Plaintiff's statement that he "sat all day." Plaintiff's full answer reads: "I don't do anything. I sit most of the day. I will go to AA meetings and visit with my children. I take naps, watch TV, as long as I don't do physical activity I am ok and [sic] my medication." (AR 252; *see also* AR 266 (responding to the same question in an October 2022 questionnaire, in which Plaintiff's response reads: "Visit with kids, then I nap to recoup or a long rest between activities. I the volunteer [at] Recovery Home. All I do is desk work [at] recovery home.).)" When considering the complete text of Plaintiff's answers, the record reveals that the ALJ improperly failed to engage with Plaintiff's statement *in context*. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ improperly cherry-picked some of [the doctor's] characterizations of [Plaintiff's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment.").

Second, during the hearing the ALJ asked about this potential inconsistency—giving Plaintiff an opportunity to clarify, the ALJ asked: "In your function report or your exertional report, you had said that you spent most of your day sitting. Is that not the case anymore?". (AR 61.) In response, Plaintiff explained,

> No. I never said that. I said that I sit and I lay down. It's like, on my day—what I do on my days—I said that most of the time, I sit and watch movies. And then, I'll go lay down. And then, I'll go back and sit on the couch . And then, I'll go lay down. It just depends on how I feel, you know? It's not—there's not much I could do, except [to] go back and forth.

(*Id.*) Plaintiff's response is not inconsistent with his answer to the August exertional questionnaire when taken in the context of his complete answer. Plaintiff's testimony makes clear that while he sits for most of the day, he must punctuate his sitting with changes in position—going back and forth between laying down and resting or taking naps, which is consistent with his answers on the questionnaires. (*See* AR 252; *see also* AR 266). And, importantly, the ALJ's reasoning failed to include an explanation for the ALJ's disregard and implicit dismissal of Plaintiff's explanation at

13

the hearing. *See Quiroz v. Kijakazi*, No. 1:22-CV-01215-GSA, 2023 WL 7305263, at *7 (E.D. Cal. Nov. 6, 2023) ("Though it is commendable that the ALJ gave Plaintiff an opportunity to explain a potentially unfavorable notation in the treatment records, the ALJ disregarded the responses without explanation. Plaintiff's explanation was not implausible . . . . [and] does not necessarily undermine Plaintiff's testimony."). Because the ALJ improperly failed to (1) consider Plaintiff's statements in context and (2) explain why he discounted Plaintiff's explanation directly addressing this alleged inconsistency at the hearing, the Court concludes that the ALJ's did not provide clear and convincing reasons supporting his finding that Plaintiff was inconsistent as to his need to sit. And beyond the issue of sitting, the ALJ did not identify any other inconsistencies in Plaintiff's testimony.

Turning to whether Plaintiff's daily activities demonstrated a level of activity transferable to full-time work, the ALJ found that "[t]here were multiple inconsistencies in the claimant's allegations as to his complete inability to perform work." (AR 18.) Specifically, the ALJ highlighted Plaintiff's (1) ability to "care for young children at home, which can be quite demanding both physically and emotionally;" (2) ability to work in a volunteer position, in which Plaintiff worked "2-3 hours;" (3) "ability to sweep and mop with breaks," and (4) ability to drive. (*Id.*)

Starting with Plaintiff's ability to "care for young children at home," the Court notes that Plaintiff's children are teenagers, rather than "young children"[6] and "presumably, the daily care of a [teenager] who is at school much of the day is not as physically demanding as caring for [a young child]." *Branham v. Colvin*, No. 12-CV-00129-JPH, 2013 WL 3830472, at *6 (E.D. Wash. July 24, 2013). In fact, other than testimony that Plaintiff does not drive his children to school, (AR 49), "the record is largely silent as to the extent of [P]laintiff's child care activity." *Id.* And, therefore, (1) there is no evidence that Plaintiff's care for his teenage children is inconsistent with his statements regarding his need for multiple long breaks throughout the day, during which time he must lay down or (2) any child care duties he may have amount to demonstrating that Plaintiff is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639; *see also Branham*, 2013 WL 3830472, at *6.

---

[6] The record reflects that at the time of the hearing, Plaintiff's children were 16 and 13 years old. (AR 48.)

Next, regarding Plaintiff's testimony about his volunteer position, the record does not indicate that Plaintiff could—or did—volunteer for a substantial part of each day in a way that would demonstrate that Plaintiff would be able to perform the physical functions "transferable to a work setting." *Orn*, 495 F.3d at 639. In fact, the record reflects the opposite. (AR 53 (Plaintiff's testimony that he would only volunteer for two to three hours one to two days a week), 64 (Plaintiff's testimony that he could not have volunteered for longer than two to three hours a day).) And because part-time work is not necessarily inconsistent with a claim of disability, the Court finds that the ALJ failed to clearly and convincingly explain how Plaintiff's part-time volunteering conflicted with Plaintiff's testimony or demonstrated Plaintiff's ability to work full time. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding that parttime work would not be inconsistent with the claimant's specific allegations); *see also Martin v. Comm'r of Soc. Sec. Admin.*, No. CV-24-00402-TUC-JCH (MSA), 2025 WL 1953357, at *4 (D. Ariz. May 13, 2025), *report and recommendation adopted*, No. CV-24-00402-TUC-JCH, 2025 WL 1953044 (D. Ariz. July 16, 2025).

As to sweeping and mopping, Plaintiff expressly stated that he could sweep and mop but needed to "take breaks in between." (AR 253; *see also* AR 267 ("I must rest between each chore").) Therefore, the Court finds that (1) the ALJ misconstrued Plaintiff's representations as to sweeping and mopping by failing to address Plaintiff's report that such activity required breaks to complete, (2) Plaintiff's reports about his ability to sweep and mop is consistent with Plaintiff's testimony that he needs to take several extended breaks throughout the day to lay down, and (3) Plaintiff's statements do not demonstrate that Plaintiff would be able to perform the physical functions "transferable to a work setting." *Orn*, 495 F.3d at 639; *see also Parker D. v. Saul*, No. 19-CV-1818 W (AHG), 2021 WL 8153631, at *4 (S.D. Cal. Sept. 22, 2021) ("[h]owever, all these activities were in fact sporadic and punctuated with rest. Plaintiff consistently explained in disability reports and in his testimony that he can only engage in these activities for short periods of time and afterwards requires significant rest").

And while the ALJ relied on Plaintiff's driving, at the 2024 hearing, Plaintiff testified that he does not have a driver's license. (AR 49). And while the record does include Plaintiff's self-

report of driving in 2022, (AR 253, 267), the ALJ did not rely on Plaintiff's driving as evidence that he contradicted his own testimony. Instead, and the ALJ merely relied on Plaintiff's driving as evidence of "high daily living." (AR 49.) Therefore, any potential inconsistency in the record as to Plaintiff's driving cannot be a reason this Court relies on in reviewing the ALJ's decision. *See Om v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Further, because the Court has found that the other evidence of Plaintiff's so called "high daily living" does not support the ALJ's negative credibility determination for the reasons discussed above, the ambiguous evidence as to whether Plaintiff drives, standing alone, is not a clear and convincing reason to reject Plaintiff's subjective symptoms and limitations.

In sum, the Court finds that the ALJ failed to meet the burden to identify clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, the Court is unable to find the ALJ's decision is supported by substantial evidence in the record.

**C.    Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless. *Molina*, 674 F.3d at 1115. Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The Court cannot conclude that the error is harmless. Had the ALJ credited Plaintiff's statements related to his fatigue and need to take at least two breaks a day—during which time he needed to lay down for 30 minutes to an hour—and assessed a more restrictive RFC, the disability determination may have been different. (*See, e.g.*, AR 65 (Plaintiff testifying that he would need to take a nap or lay down "at least twice a day . . . maybe more than that"); (AR 69–70 (VE testimony

1  that being off task more than 20% of the workday or requiring multiple unscheduled work breaks
2  would be preclusive of competitive work).)  Thus, the Court is unable to say that the error was
3  "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits.  Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted.  *See, e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints").  On remand, the Commissioner shall further develop the record, as outlined above, to properly assess Plaintiff's subjective symptom statements is appropriate in this action.

### V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Randy Lee Sosa and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **January 5, 2026**              /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE

17